| | | |
|---|---|---|
| CORTEZ MEADOWS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | NO.  CIV-14-1030-HE |
| | ) | |
| SHERIFF JOHN WHETSEL, in his | ) | |
| individual and official capacity, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Plaintiff filed this case against the Board of County Commissioners of Oklahoma County ("County"), John Whetsel, Sheriff of Oklahoma County, John L. Jacobson, deputy sheriff of Oklahoma County and Jose R. Botello, a detention officer for Oklahoma County, alleging a § 1983 claim for violation of his Fourteenth Amendment rights, plus supplemental claims under the Oklahoma Constitution and the Oklahoma Governmental Tort Claims Act ("GTCA"), 51 Okla. Stat. §§151-200.  Defendants Whetsel, Jacobson and Botello are sued in both their individual and official capacities.  Plaintiff's claims are based on his alleged treatment by defendants Jacobson and Botello while he was being booked into the Oklahoma County Detention Center ("jail").  Plaintiff contends the officers beat him and exposed him to human waste.  He alleges he verbally complained to staff and that, following his release from the jail, he filed a formal grievance.  He further alleges the Sheriff's office conducted an internal investigation, that Jacobson and Botello were terminated from their positions, and that the district attorney subsequently brought criminal assault and battery charges against the officers.

Motions to dismiss plaintiff's second amended complaint[1] pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6) have been filed by the County and Sheriff Whetsel in his official capacity and by Sheriff Whetsel in his individual capacity. Also pending are plaintiff's motions for default judgment against Jacobson and Botello.

Motions to dismiss under Rule 12(b)(1) ordinarily take one of two forms. They challenge either the facial sufficiency of the complaint to show jurisdiction or the factual basis for it. *See* Holt v. U.S., 46 F.3d 1000, 1002 (10th Cir. 1995). Where the challenge is principally to the factual basis, the court may look beyond the complaint and consider other evidence to resolve disputed jurisdictional facts. *Id.* The court may not presume the truthfulness of the complaint's factual allegations when it considers a factual attack on subject matter jurisdiction and has discretion to review affidavits and other documents. *Id.* "In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion. *Id.* Defendants claim the court lacks jurisdiction over plaintiff's state tort claims and his Oklahoma constitutional claims asserted under Bosh[2] because he failed to properly exhaust his administrative remedies.

When considering whether a plaintiff's claim should be dismissed under Rule

---

[1] *The court will refer to the second amended complaint subsequently simply as the "complaint."*

[2] *Bosh v. Cherokee Cnty, Bldg. Auth., 305 P.3d 994 (Okla. 2013). In Bosh the Oklahoma Supreme Court recognized a private right of action against a governmental entity for excessive force based on Art. 2, § 30 of the Oklahoma Constitution, notwithstanding the limitations of the Oklahoma Governmental Tort Claims Act. It further recognized the doctrine of respondeat superior as an available theory of recovery for claims under that provision.*

12(b)(6), the court accepts all well-pleaded factual allegations as true and views them in the light most favorable to the plaintiff as the nonmoving party. <u>S.E.C. v. Shields</u>, 744 F.3d 633, 640 (10th Cir. 2014). All that is required is "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The complaint must, though, contain "enough facts to state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570, 555 (2007). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" <u>Shields</u>, 744 F.3d at 640 (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)). Considering the complaint under this standard, the court concludes defendant Whetsel's motion filed in his individual capacity should be granted and the motion filed by the County and defendant Whetsel in his official capacity should be granted in part and denied in part.

Plaintiff asserts four claims in his complaint. In his first cause of action, he alleges that, on December 1, 2013, without provocation or justification, defendants Jacobson and Botello kicked and punched him and slammed his head and body onto a urine covered floor while he was being booked into the Oklahoma County Detention Center. Plaintiff claims that after the assault he did not receive medical treatment or the means with which to remove the human waste from his face. He asserts a §1983 excessive force and a

§1983 conditions of confinement claim under the Fourteenth Amendment[3] and <u>Bosh</u> claims under parallel provisions of the Oklahoma Constitution[4] against Deputy Jacobson and Officer Botello.

In his second cause of action, plaintiff asserts assault, battery and intentional infliction of emotional distress claims[5] against defendants Jacobson and Botello. He also contends the County is liable for Jacobson and Botello's acts as their employer under <u>Bosh</u> and the GTCA.

In his third cause of action, plaintiff asserts that the County and Sheriff Whetsel are responsible for the unlawful conduct of defendants Jacobson and Botello because they failed "with deliberate indifference" to adequately train deputy sheriffs and detention officers, "thereby causing" defendants Jacobson and Botello "to engage in the unlawful conduct." Doc. #65, p. 12, ¶43.[6] He cites multiple incidents of excessive force involving

---

[3]*Although plaintiff also alleges that his action is brought pursuant to 42 U.S.C. § 1988, he acknowledges in his response brief that, as a pro se litigant, he cannot be awarded attorney's fees under § 1988. Doc. #75, p. 17. See <u>Kay v. Ehrler</u>, 499 U.S. 432, 435–38 (1991) (pro se litigants, even if attorneys, may not be awarded attorney's fees under § 1988).*

[4]*Plaintiff's <u>Bosh</u> excessive force claim is based on Article 2, §30 of the Oklahoma Constitution, while his <u>Bosh</u> conditions of confinement claim is based on Article 2, §7 of the Oklahoma Constitution.*

[5]*When stating his claims against defendants Jacobson and Botello in his second cause of action, plaintiff alleges a claim for "negligent intentional infliction of emotional distress." Oklahoma does not recognize a separate cause of action for negligent infliction of emotional distress, but considers such to be encompassed within a claim for negligence. <u>Schovanec v. Archdiocese of Oklahoma City</u>, 188 P.3d 158, 173 n.22 (Okla. 2008). ("[I]n Oklahoma the negligent causing of emotional distress is not an independent tort, but is in effect the tort of negligence."). The court will construe plaintiff's claim to be for intentional infliction of emotional distress.*

[6]*Page references for briefs and exhibits are to the CM/ECF document and page number.*

employees of the Oklahoma County Sheriff's Department and persons being held in the Oklahoma County jail. One incident occurred in December 2013, one in July 2012, while the other four took place in 2004. Plaintiff also relies on a report that the U.S. Department of Justice issued on July 31, 2008, following an investigation of the Oklahoma County jail and four tours of the jail. Three of the tours took place in 2003, the other in 2007. Doc. #65-7.

In his fourth cause of action, plaintiff asserts a substantive due process claim under the Fourteenth Amendment and the Oklahoma Constitution[7] against defendants Jacobson and Botello. He also alleges that the County and Sheriff Whetsel are responsible for his injuries because defendants Jacobson and Botello were improperly hired, trained and supervised. Plaintiff asserts Jacobson and Botello acted under the County and Sheriff's direction and control and pursuant to official County custom or policy. He further alleges that the County and Sheriff "authorized, condoned and ratified" the acts of the sheriff's deputies and detention officers. Doc. #65, p. 14, ¶51-52.

<u>Analysis</u>

The County and Sheriff Whetsel contend that plaintiff has improperly sued the County <u>and</u> the Sheriff in his official capacity, and that he has failed to exhaust his administrative remedies. The court will address their joint and then their individual arguments.

---

[7]*Plaintiff's <u>Bosh</u> substantive due process claim is based on Article 2, §7 of the Oklahoma Constitution.*

An official capacity § 1983 claim "'represent[s] only another way of pleading an action against an entity of which an officer is an agent.'" Cox v. Glanz, 800 F.3d 1231, 1254 (10th Cir. 2015) (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n. 55 (1978)). A "suit against Sheriff [Whetsel] in his official capacity as sheriff is the equivalent of a suit against [Oklahoma] County." Id. (internal quotation marks omitted). Plaintiff concedes he has improperly sued the Sheriff in his official capacity. Doc. #76, p. 12. His official capacity claims against Sheriff Whetsel, and also defendants Jacobson and Botello, will be dismissed. This decision does not affect plaintiff's claims asserted against these defendants in their individual capacities.

That leaves, at this point, the following claims.[8] Against defendants Jacobson and Botello, individually, plaintiff has asserted excessive force, conditions of confinement and substantive due process claims under § 1983 and Bosh, plus assault, battery, and intentional infliction of emotional distress claims under state law. Against the County, plaintiff has asserted claims under § 1983, Bosh and the Oklahoma Governmental Tort Claims Act based on the conduct of Jacobson and Botello. Against Sheriff Whetsel, plaintiff has asserted supervisory liability claims under both § 1983 and Bosh based on his implementation of an unconstitutional policy or custom and his alleged deficient hiring, training and supervision of Jacobson, Botello and the other jail staff, and because

---

[8]*Because he is proceeding pro se, the court has liberally construed plaintiff's complaint. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir.1991) ("A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers.").*

he allegedly ratified or condoned Jacobson and Botello's conduct.

The County and Sheriff also both contend that plaintiff failed to properly exhaust his administrative remedies because, although he did make a verbal complaint, he did not follow up by submitting an informal grievance or written request to staff at the Oklahoma County Detention Center prior to filing a written grievance, as required by the grievance process established by Sheriff Whetsel. See Doc. #72-1, p. 3 (Inmate Handbook). They also complain that he failed to follow Oklahoma's procedural rule, 12 Okla. Stat. §2003.1(B)(9), which required him to demonstrate the court's jurisdiction by including in his complaint "[a] statement of prior judicial and administrative relief sought" along with supporting documentation.

State law authorizes county sheriffs to adopt administrative procedures to handle prisoners' grievances.[9] 57 Okla. Stat. § 566.3(G)(1). As defendants note, exhaustion is a jurisdictional requirement. 57 Okla. Stat. § 566.5; Burghart v. Corrections Corp. of America, 224 P.3d 1278, 1282 (Okla.Civ.App. 2009). State law provides that

> [i]n any legal proceeding filed by an inmate, full and complete exhaustion of all administrative and statutory remedies on all potential claims against the state, the Department of Corrections, private entities contracting to provide correctional services, or an employee of the state or the Department of Corrections is a jurisdictional requirement and must be completed prior to the filing of any pleadings.

57 Okla. Stat. § 566.5. *See* 57 Okla. Stat. §§ 564; 566.3(G)(2). However, defendants

---

[9]*"Prisoner" is defined in § 566.3 to "include, but not be limited to, a person in custody or whose claims arose during custody." 57 Okla. Stat. § 566.3(I).*

have not shown that demonstrating compliance with the pleading requirement also is a jurisdictional requirement. The court concludes that plaintiff's noncompliance with 12 Okla. Stat. 2003.1(B)(9) does not mandate dismissal of the complaint.

The pertinent question is whether plaintiff exhausted his administrative remedies. Defendants argue that, although plaintiff made the required verbal and formal complaints, he did not properly exhaust his administrative remedies because he never filed a request to staff or appealed his grievance to the Oklahoma County Sheriff Jail Administrator. However, defendants admit that "[p]laintiff did make a verbal complaint, which was investigated." Doc. No. 71, p. 26; 72, p. 17. They admit he properly invoked the first step of the Oklahoma County Detention Center's grievance process. *Id.*; Doc. Nos. 71-1, p. 3; 71-2, p. 1. The investigation led to the termination of the employees involved and the filing of criminal charges against them. Defendants fail to explain what further relief plaintiff could have obtained from the Sheriff and County if he had "sought to appeal or further avail himself of the administrative remedies." Doc. #72, p. 18. As shown by <u>Ross v. Cnty. of Bernalillo</u>, 365 F.3d 1181(10th Cir. 2004), *overruled on other grounds by* <u>Jones v. Bock</u>, 549 U.S. 199 (2007) plaintiff exhausted his claims.[10]

In <u>Ross</u> the plaintiff asserted Eighth Amendment claims against a county and a correctional services corporation that operated a county detention center, alleging that a slippery shower floor at the detention center was unreasonably dangerous and that he did

---

[10]Although <u>Ross</u> dealt with exhaustion under the Prison Litigation Reform Act, the court finds it instructive.

not receive appropriate medical attention after falling and injuring his shoulder in the shower. The plaintiff had filed a pre-grievance resolution form reporting his fall, complaining that the shower floor was unsafe because it was smooth and lacked mats and asking that the problem be corrected. A grievance officer responded that a shower mat had been placed in the shower where the plaintiff had fallen. The district court concluded that the plaintiff had not initiated or exhausted administrative procedures with respect to his dangerous conditions of confinement claims. The Tenth Circuit disagreed. It determined that the plaintiff had, like Meadows, invoked the first step of the grievance process with respect to his dangerous conditions claims and then turned to "whether he was obligated to resort to step two of that process, filing a formal grievance." Ross, 365 F.3d 1187. The court held that "he was not required to do so because he was successful in the first stage of the grievance process, and nothing in the record suggests that there was any further relief whatsoever available through MCDC procedures." Id.[11] It concluded that

> [o]nce a prisoner has won all the relief that is available under the institution's administrative procedures, his administrative remedies are exhausted. Prisoners are not required to file additional complaints or appeal favorable decisions in such cases. When there is no possibility of any further relief, the prisoner's duty to exhaust available administrative remedies is complete."

---

[11]*The formal complaint form which plaintiff completed directed the prisoner to "describe in detail the nature of the incident, giving specific details, statements violations, locations and/or personal injuries or property loss." Doc. #72-4, p. 2. See generally* Howard v. Waide*, 534 F.3d 1227, 1244 n.9 (10th Cir. 2008) ( noting, quoting* Booth v. Churner*, 532 U.S. 731, 739 (2001), that "'one "exhausts" processes, not forms of relief'")*

*Id.*

Defendants acknowledge that Meadows began the grievance process by verbally reporting the December 1, 2013, incident. They responded by conducting an investigation, terminating the individuals involved and initiating criminal charges against them. Here, as in Ross, "[i]t appears that [defendants were] unable to do anything more in response to [Meadows'] complaint." Id. at 1187. "Having received all the relief the grievance process could offer, [Meadows] was required to do no more in order to exhaust his administrative remedies with respect to his [claims]." *Id.* The court concludes plaintiff exhausted his administrative remedies.

Insofar as defendants assert that plaintiff's claim is untimely under 57 Okla. Stat. § 566.3(G)(5), that provision is inapplicable. It requires "[a]ny prisoner who is allegedly aggrieved by an adverse decision by the Department of Corrections or a sheriff rendered pursuant to any grievance procedure" to file the appropriate civil action within 180 days after the final decision is issued. *Id.* (emphasis added). As has been discussed, plaintiff did not receive an adverse decision. His lawsuit is not time-barred.

Sheriff Whetsel

Section 1983 claims

Plaintiff does not allege that Sheriff Whetsel personally participated in the December 1, 2013, incident or had "direct and contemporaneous knowledge" of plaintiff's treatment by Jacobson and Botello on that date. Cox, 800 F.3d at 1248. Rather, he seeks to hold the Sheriff accountable under §1983 for his injuries as Jacobson

and Botello's supervisor, based on the jail staff's alleged inadequate training and supervision and also due to asserted deficiencies in hiring. He also claims the Sheriff implemented an unconstitutional policy or custom and ratified or condoned Jacobson and Botello's conduct.

To impose supervisory liability, a plaintiff first must "establish the supervisor's subordinates violated the [C]onstitution." Dodds v. Richardson, 614 F.3d 1185, 1195 (10th Cir. 2010) (internal quotation marks omitted). The next step is to "'show an "affirmative link" between the supervisor and the constitutional violation.'" Cox, 800 F.3d at 1248 (quoting Estate of Booker v. Gomez, 745 F.3d 405, 435 (10th Cir.2014)). As explained by the court in Cox, the "affirmative link" has three related prongs: "'(1) personal involvement, (2) sufficient causal connection, and (3) culpable state of mind.'" Id. (quoting Dodds, 614 F.3d at 1195). Although Sheriff Whetsel asserts multiple arguments in support of his motion to dismiss,[12] his principal argument is that plaintiff has not sufficiently pleaded he personally participated in the constitutional violations. His main defense to plaintiff's Bosh claims is that he, in his individual capacity, did not employ Jacobson and Botello.

"[S]upervisory liability allows a plaintiff to impose liability upon a

---

[12]In their motions and supporting briefs, the Sheriff and County address various negligence claims. Doc. Nos.71, pp. 17, 28-33; 72, pp. 33-34. Plaintiff has not, though, sued the Sheriff for negligence, but rather based his claims on the Sheriff's alleged "deliberate indifference to Plaintiff's safety and well-being." Doc. #65, p. 13, ¶48. He also has not sued the County based on its accountability for its employees' negligence. The court therefore has not addressed the parties' arguments relating to their liability for negligent conduct.

defendant-supervisor who creates, promulgates, [or] implements ... a policy ... which subjects, or causes to be subjected that plaintiff to the deprivation of any rights ... secured by the Constitution." Cox, 800 F.3d at 1248 (internal quotation marks omitted). The problem is plaintiff has not stated any facts demonstrating that the Sheriff created a policy that denied the plaintiff's constitutional rights, id., had "actual knowledge of past constitutional violations being carried out by a subordinate, and [did] nothing to stop future occurrences," Dodds, 614 F.3d at 1212 (Tymkovich, J., concurring), knew about the conduct and condoned it, id., or failed to train or supervise jail staff. Id. He makes only conclusory, unsubstantiated statements, such as that his injuries were the direct result of defendants Jacobson and Botello acting "pursuant to the official policy, practice, pattern, or custom of the County and the Sheriff of improperly hiring, training, and supervising" them, "thus demonstrating the County's and the Sheriff's deliberate indifference to Plaintiff's safety and well-being." Doc. #65, p. 13, ¶48. A plaintiff cannot substitute § 1983 buzz words for facts. "[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Twombly, 550 U.S. at 555 (internal quotation marks omitted).

Plaintiff does not allege that the Sheriff was aware of past assaults on prisoners by Jacobson or Botello or knew about their commission of other constitutional violations and

ignored them.[13]  Moreover, plaintiff's wholly conclusory allegation to the effect that the Sheriff condoned or ratified their conduct is completely inconsistent with the specific facts he does allege — the allegation that the Sheriff terminated the employment of both officer and that criminal charges were filed against them.  Further, the complaint is devoid of allegations about specific deficiencies in the Sheriff's hiring practices in general or in his decision to hire Jacobson or Botello in particular.  *See generally* Schneider v. City of Grand Junction Police Dep't, 717 F.3d 760, 771-72 (10th Cir. 2013). Plaintiff also has not pointed out particular training deficiencies or supervision failures.

Plaintiff does cite past instances of the use of excessive force by jail employees. However, while specific allegations of persistent, ongoing constitutional violations might be sufficient to demonstrate deliberate indifference or tacit approval in some circumstances, they do not do so here.  Only two of the alleged incidents occurred recently, one in 2012 and the other in 2013.  Plaintiff does not claim that Sheriff Whetsel participated in, ordered, or ratified either of those excessive force incidents.  To the contrary, plaintiff's submissions indicate the officers involved, like Jacobson and Botello, were terminated and prosecuted.[14]  The other specific incidents plaintiff identifies

---

[13]*Plaintiff also does not allege any facts in his complaint pertaining to his conditions of confinement claim that would indicate his treatment on December 1, 2013, was anything more than an isolated occurrence.  As plaintiff does not specify a separate ground for his substantive due process claim, the court assumes he bases it on the same allegations that underlie his excessive force and conditions of confinement claims.*

[14]*Plaintiff attached to his complaint the probable cause affidavit used to obtain the arrest of the Sheriff's employee who was involved in the 2013 incident (Sanchez).  In it an Oklahoma State Bureau of Investigation Special Agent stated "[b]ased on the OCSO (Oklahoma County Sheriff's*

occurred in 2004, and each of them resulted in the termination of the employees involved. *See* Doc. Nos. 65-1, 65-2, 65-3, 65-4. These incidents do not support an inference that the Sheriff acquiesced in the use of excessive force. Plaintiff also relies on a Department of Justice report which was based on tours of the Oklahoma County jail that were conducted in 2003 and 2007. Neither the 2004 incidents nor the report are recent enough to be relevant to a determination of whether plaintiff has demonstrated a widespread practice of the use of excessive force that is so common as to constitute a continuing, persistent practice of unconstitutional conduct by the County's employees. Two isolated, unrelated incidents, even if relatively recent, without more, are not enough to allege an unconstitutional custom or County policy.[15] The Fifth Circuit in <u>Peterson v. City of Fort Worth</u>, 588 F.3d 838, 852 (5th Cir. 2009) concluded that "27 incidents of excessive force over a period of four years do not reflect a pattern that can be said to represent official policy of condoning excessive force so as to hold the City liable for the acts of its employees' unconstitutional conduct."[16] Where prior incidents are used to prove a pattern,

_____

*Office) Use of Force Policy and Training Standards, SANCHEZ was not acting within the agency based training or department guidelines." Doc. # 65-2, p. 15.*

   [15]*Plaintiff does not allege there was an official policy sanctioning excessive force and, in fact, acknowledges in his response brief that the two officers acted <u>in violation of</u> the Sheriff's Office Use of Force policy. Doc. #75, p. 16. Among the findings in an internal investigation report prepared by the Sheriff's office in response to plaintiff's complaint, which plaintiff cites in his brief, is that the force used by Jacobson and Botello was "not consistent with agency policy." Id. at p. 6.*

   [16]*The court noted that the City had "relied on the fact that only four of the 27 complaints were 'sustained' after [an internal] investigation," but concluded that, " even assuming error in the unsustained investigations, the record as a whole will not support a legal conclusion that the City maintained an official policy of condoning excessive force." <u>Peterson</u>, 588 F.3d at 852.*

they must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." *Id.* at 850 (internal quotation marks omitted).

Plaintiff devotes his response brief to a discussion of how he "has established that Defendant Oklahoma County Sheriff Deputy John L. Jacobson and Defendant Oklahoma County Sheriff Detention Officer Jose R. Botello's excessive and unreasonable use of force violated the Fourth Amendment and violated Oklahoma County Sheriff's Office Use of Force Policy." Doc. #75, p. 16. And he again references the six prior excessive use of force instances. As the court has concluded those incidents are not enough to demonstrate the required policy or custom and § 1983 "does not allow a plaintiff to hold an individual government official liable "under a theory of respondeat superior," Dodds, 614 F.3d at 1194 (internal quotation marks omitted), plaintiff's § 1983 claims against Sheriff Whetsel in his individual capacity – his excessive force, his conditions of confinement and his substantive due process claims – will be dismissed.

Bosh claims

Sheriff Whetsel offers several challenges to plaintiff's Bosh claims, but only one needs to be discussed. He contends they should be dismissed because, while Bosh allows a party to impose respondeat superior liability on an employer, he did not employ Jacobson and Botello. Plaintiff does not challenge this aspect of the Sheriff's motion and thereby confessed it. See LCvR7.1(g). The court also agrees that the County, Jacobson

and Botello's employer, not the Sheriff, is responsible for their actions.  *See* <u>Bosh</u>, 305 P3d. at 1004 ("[W]e hold that in an action pursuant to the Okla. Const. art 2, § 30, respondeat superior applies to hold municipal corporations liable for the actions of their employees where those employees are acting within the scope of their employment."). Plaintiff's <u>Bosh</u> claims against Sheriff Whetsel will be dismissed.

<u>County</u>

<u>Section 1983 claims</u>

Against the County, plaintiff asserts excessive force, conditions of confinement and substantive due process claims under § 1983 based on the conduct of Jacobson and Botello.  Prevailing against the County for the actions of its officers "requires proof that (1) an officer committed a constitutional violation and (2) a [county] policy or custom was the moving force behind the constitutional deprivation that occurred." <u>Estate of Larsen ex rel. Sturdivan v. Murr</u>, 511 F.3d 1255, 1264 (10th Cir. 2008).  The Supreme Court first held in <u>Monell v. Department of Social Services</u>, 436 U.S. 658, 691-92 (1978) "that a plaintiff must identify 'a government's policy or custom' that caused the injury" to impose municipal liability.  <u>Schneider</u>, 717 F.3d at 769.  The Court later "required a plaintiff to show that the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury." *Id.*  The County claims the absence of the requirement of an official policy or custom, mandates the dismissal of plaintiff's excessive force claim.  It contends he has not alleged a sufficiently serious deprivation to state a conditions of confinement claim.

Excessive force

> The "official policy" requirement was intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.  A challenged practice may be deemed an official policy or custom for § 1983 municipal-liability purposes if it is a formally promulgated policy, a well-settled custom or practice, a final decision by a municipal policymaker, or deliberately indifferent training or supervision.

Schneider, 717 F.3d at 770 (internal quotation marks omitted).

Plaintiff has not alleged that a formally promulgated policy was the moving force behind the County's asserted deprivations of his constitutional rights, but relies on an unwritten policy or custom based on prior incidents of excessive force by jail employees. He also seeks to hold the County liable based on Sheriff's Whetsel's alleged failure to train and supervise the jail staff and because he condoned or ratified the unconstitutional conduct.

Conceding that the Sheriff is the final policymaker with respect to the jail, *see* 19 Okla. Stat.  §§ 513-513.1, the County makes essentially the same arguments that Sheriff Whetsel made regarding the lack of a factual basis for plaintiff's excessive force claim. Plaintiff responds by again relying on the same six incidents of excessive force cited in the complaint.  For the reasons stated earlier, the court does not consider those incidents sufficient to demonstrate a widespread practice or custom or to alert the Board to a "longstanding pattern of . . . violent assaults."  Doc. #76, p. 18.[17]

---

[17]*As noted previously, four of the incidents occurring in 2004, more than nine years before plaintiff was allegedly assaulted.*

Plaintiff's minimal factual assertions are not enough to state a plausible claim or support his broad allegation that there was an unconstitutional County policy or custom that was the "moving force" behind the violation of plaintiff's Fourteenth Amendment rights. For the reasons stated in conjunction with plaintiff's claims against the Sheriff, plaintiff also has not plead enough facts to state an excessive force claim against the County based on the jail staff's hiring, training or supervision. He also has not pleaded facts demonstrating that the Sheriff authorized or ratified Jacobson and Botello's use of excessive force. Plaintiff's § 1983 excessive force claim against the County will be dismissed.

Conditions of Confinement and Substantive Due Process

"Prison officials are required to provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety." Barney v. Pulsipher, 143 F.3d 1299, 1310 (10th Cir.1998). The County claims plaintiff has not stated a conditions of confinement claim because he failed to allege that his exposure to urine was of sufficient duration to be considered a serious deprivation. The court does not have to determine whether plaintiff's allegations are adequate to state a conditions claim,[18] as there is another more fundamental problem that exists with respect

---

[18]*While it is doubtful plaintiff's exposure to the urine was of sufficient duration to state a conditions of confinement claim, he alleges that he sustained injuries to his head, back, wrist, neck and shoulder and did not receive medical treatment. Doc. #65, p. 7 ("Plaintiff was not taken to the medical clinic to be cleared for the assault, battery, physical abuse, beating and exposure to human waste . . . .").*

to this claim and plaintiff's § 1983 substantive due process claim against the County. It is the same problem that undercuts plaintiff's § 1983 claims against the Sheriff – he has not alleged <u>facts</u> substantiating his conclusory assertions that the officers violated his rights as the result of an unconstitutional policy or custom or due to lack of training or supervision. Simply alleging that after he was not taken to the medical clinic after he was assaulted and was not provided with "basic human needs such as soap and a clean wash cloth to clean the human waste ("Urine") off of his face and out of his eyes and ears nor was he given clean clothes to change into" is not enough to hold the County liable under § 1983.

 Doc. #65, pp. 7-8. "As with so-called supervisory liability discussed above, municipal liability in a § 1983 case cannot be established on a theory of vicarious liability. Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." <u>Schneider</u>, 717 F.3d at 770 (internal quotation marks omitted). Plaintiff's remaining § 1983 claims (conditions of confinement and due process) against the County will be dismissed.

Bosh claims

The County asserts that "[p]laintiff's broad statement that Defendants violated his rights under 'Oklahoma Constitution, Art. 2 Section 7' is simply too generic and generalized and deprives Defendants of fair notice," Doc. #72, p. 39, to state a claim under <u>Bosh</u>. It also challenges whether a <u>Bosh</u> claim is available for such a claimed

violation.

Although plaintiff's submissions reflect considerable familiarity with a variety of legal principles and to a considerably greater extent than the usual *pro se* litigant, it is not altogether clear from the complaint or plaintiff's briefing exactly what state constitutional claims he is asserting beyond an excessive force claim such as was involved in <u>Bosh</u>. If he is pursuing some broader claim than for excessive force, the court has some doubt whether such a claim is legally available under <u>Bosh</u> or its rationale. To date, the Oklahoma Supreme Court has recognized and considered the nature of a <u>Bosh</u> claim in only two cases—<u>Bosh</u> itself and <u>Perry v. City of Norman</u>, 341 P.3d 689 (Okla. 2014). Both cases involved claims of excessive force by police officers, situations which were within the express scope of <u>Bosh</u> ("we ... hold that the Okla. Const. art 2, § 30 provides a private cause of action for excessive force ...."). It appears not to have applied the <u>Bosh</u> rationale to any situation other than one involving excessive force.[19] There is authority from Oklahoma's intermediate appellate courts indicating that <u>Bosh</u> may apply more broadly. In <u>GJA v. Oklahoma Dep't of Human Servs.</u>, 347 P.3d 310 (Okla.Civ.App. 2015), the Court of Civil Appeals concluded that a <u>Bosh</u> claim could be based on Art. 2, §7 of the Oklahoma Constitution, the due process clause. That court viewed the <u>Bosh</u> court as having "made a statement of policy (upholding constitutional guarantees and protections) as its broader holding," *id.* at 316, at least implying that its rule would extend

---

[19]*Similarly, the case which the Oklahoma Supreme Court viewed as foreshadowing <u>Bosh</u>, <u>Washington v. Barry</u>, 55 P.3d 1036 (Okla. 2002), involved claims of excessive force.*

to any constitutional provision. However, the later <u>Perry</u> decision is plainly not that expansive and continued to apply the doctrine only where other remedies are unavailable. And, as noted above, <u>Perry</u> involved only an excessive force claim.

In any event, given both the uncertainty as to the nature of any further state constitutional claims (i.e. beyond excessive force) which plaintiff may be seeking to assert and the doubts as to even the availability of such claims, the court concludes the complaint fails to state a claim insofar as it relies on Art. 2, § 7, or other state constitutional provision, and those purported claims will be dismissed. As the uncertainties at least as to plaintiff's allegations may be clarified by a revised pleading, plaintiff is granted leave to file a further amended complaint as to this claim, if he elects to do so.

That leaves plaintiff's claim under <u>Bosh</u> for excessive force. The County contends that the Oklahoma Supreme Court recently held in <u>Perry</u> that a <u>Bosh</u> excessive force claim may not be brought against a municipality when a claim under the GTCA is available. Plaintiff has, the County states," both the Federal Constitutional claims through § 1983 available to him as well as claims under the Oklahoma GTCA that will avail him of remedies for his excessive force and due process claims without the need for inclusion of a <u>Bosh</u> claim." Doc. #72, p. 40. However, <u>Bosh</u> indicates the fact that plaintiff may have federal claims available does not matter. What does matter is whether plaintiff has an excessive force claim available under the GTCA. And that he does not have, due to the statutory exception for liability for injuries resulting from the

"[p]rovision, equipping, operation or maintenance of any prison, jail or correctional facility. . . ." 51 Okla. Stat. §155(25). *See* <u>Bosh</u>, 305 P.3d at 1000. Because plaintiff cannot pursue his <u>excessive force claim</u> against the County under the GTCA, "the Okla. Const. art 2, § 30 provides a private cause of action for excessive force, notwithstanding the requirements and limitations of the OGTCA." *Id.* at 1001

Other GTCA claims

The County seeks the dismissal of plaintiff's claims asserted against it under the GTCA on the ground the Act does not apply if an employee acts outside the scope of employment. Because plaintiff has alleged that Jacobson and Botello acted intentionally and maliciously and it is well settled that intentional torts, such as assault and battery, are outside the scope of employment, the County contends it cannot be held liable under the GTCA for their conduct.[20] Dismissal of plaintiff's GTCA claim is warranted for the reason just noted – the statutory exemption precludes plaintiff's claims against the County for assault, battery and intentional infliction of emotional distress. 51 Okla. Stat. §155(25). The County's motion to dismiss will be granted with respect to plaintiff's claims asserted under the GTCA.

Plaintiff's motions for default judgment

Plaintiff has moved for default judgment against defendants Jacobson and Botello

---

[20]*The County is incorrect in this regard, at least as to assaults involving excessive force. See* <u>*Bosh*</u>*, 305 P.3d at 1003 ("Assaults of excessive force can certainly occur within one's scope of employment.").*

on the basis of failure to answer. The docket reflects that both defendants have twice answered in this case. The answers are in the nature of general denials and respond to the original complaint and the first amended complaint. [Doc. Nos. 11, 12, 42 & 43]. No answers have been filed as to the current, second amended complaint, nor have these individual defendants moved to dismiss. However, given the multiple versions of the complaint involved, the multiple answers filed previously, and the continued reliance by at least one defendant on the earlier answers [Doc. #81], the court concludes these defendants' technical default does not warrant entry of default judgment.

## Conclusion

For the foregoing reasons, the motion to dismiss filed by defendant Whetsel in his individual capacity [Doc. #71] is **granted**. The motion to dismiss filed by defendant Board of County Commissioners of Oklahoma County and defendant Whetsel in his official capacity [Doc. #72] is **granted in part** and **denied in part**. Plaintiff's official capacity claims against Sheriff Whetsel are **dismissed**. The claims asserted against the County under § 1983 and those based on Bosh, other than for excessive force, are **dismissed**. Absent further amendment, the claims remaining for trial are plaintiff's excessive force Bosh claim against the County and his claims against Jacobson and Botello under § 1983 and state law. Plaintiff is **granted** leave to further amend his complaint to attempt to state and/or clarify additional Bosh claims against the County, if he elects to do so. Any such further amended complaint shall be filed within **14 days**.

Plaintiff's motions for default judgment [Doc. Nos. 79 & 80] are **DENIED**.[21]

Due to the procedural posture of the case, including the nature, status, and timing of the multiple amendments of the complaint, and the plaintiff's *pro se* status, the present scheduling order is not realistic and is **STRICKEN**.   The case will be reset on the court's May trial docket and a revised scheduling order entered.

The parties are further **ORDERED** to confer (through counsel as to defendants) to determine whether some agreed resolution of this case is possible and, in any event, to advise the court by an appropriate filing on or before **November 20, 2015**, of their views as to whether a judicial settlement conference has the potential to be productive.

**IT IS SO ORDERED**.

Dated this 10th day of November, 2015.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE

---

[21]*Should plaintiff elect to file a further amended complaint, all defendants would be well-advised to either answer or otherwise plead to it.*